**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| KAI FUNG WU,<br><br>Petitioner,<br><br>v.<br><br>JESSICA SAGE,<br><br>Respondent. | No. 4:26-CV-01764<br><br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**AUGUST 7, 2026**

Kai Fung Wu is an immigration detainee in the custody of the United States Department of Homeland Security, Immigration and Customs Enforcement (ICE). He is currently detained at the Federal Correctional Institution in Lewisburg, Pennsylvania. Wu commenced this action by filing a petition for a writ of habeas corpus under 28 U.S.C. § 2241, seeking immediate release based on his claim that his continued detention has become unconstitutional. For the reasons that follow, the Court will grant Wu's Section 2241 petition.

## I. BACKGROUND

Wu is a citizen and native of Hong Kong, China.[1] He entered the United States in 2004 near Buffalo, New York.[2] Wu, his mother, and his sister came to

---

[1] *See* Doc. 1 ¶ 7; Doc. 6-2 at 2.
[2] Doc. 6-6 ¶ 2; Doc. 6-2 at 2.

the United States fleeing gang violence in Hong Kong.[3] In 2013, Wu was granted protection under the Deferred Action for Childhood Arrivals (DACA).[4]

On May 13, 2019, Wu was convicted of conspiracy to distribute marijuana, 21 U.S.C. § 846, and sentenced to three years' probation.[5] Six years later, on February 12, 2025, ICE took Wu into custody.[6] On February 20, 2025, he was issued a notice to appear, charging removability pursuant to Section 212(a) of the Immigration and Nationality Act (INA).[7]

On August 19, 2025, an Immigration Judge denied Wu's application for deferral of removal under the Convention Against Torture (CAT) and ordered Wu removed to China.[8] No appeal was filed.[9] Thus, the Immigration Judge's order of removal became final on September 18, 2025, when the time to appeal expired.[10]

Following his order of removal, Wu complied with every request by ICE to complete applications for a travel document.[11] ICE did not ask Wu to complete a

---

3 Doc. 1 ¶ 13.
4 *Id.* ¶ 14.
5 *Id.* ¶ 16; Doc. 6-2 at 3.
6 Doc. 6-2 at 3.
7 Doc. 6-6 ¶ 3.
8 Doc. 6-4.
9 Doc. 1 ¶ 18.
10 *See* 8 C.F.R. § 1241.1(c) ("An order of removal made by the immigration judge . . . shall become final . . . [u]pon expiration of the time allotted for an appeal if the respondent does not file an appeal within that time[.]"). Wu asserts that his order of removal became final on August 19, 2025, the day it was issued. *See* Doc. 1 ¶ 18. However, Wu did not waive his right to appeal that day; rather, the removal order indicates that Wu preserved his right to appeal. *See* Doc. 6-4 at 5. Thus, 8 C.F.R. § 1241.1(c) controls the date the order of removal became final.
11 Doc. 1 ¶ 19.

request for a travel document until October 2, 2025.[12] Wu was asked to complete a second request for a travel document on November 10, 2025.[13] He was asked to complete a third request for a travel document on November 20, 2025.[14] On December 15, 2025, Wu was asked to complete a fourth request for a travel document.[15] Wu complied with each request.

On January 8, 2026, an ICE enforcement removal officer submitted a travel document request (TDR) for review to Headquarters Removal and International Operations (HQ-RIO).[16] The next day, HQ-RIO reviewed the TDR and returned it for editing.[17] On January 15, 2026, a new TDR draft was submitted to HQ-RIO for approval.[18] On January 20, 2026, that revised TDR was approved by HQ-RIO.[19] Although the record is unclear, it appears that on the same day, the approved TDR was submitted to immigration officials at the Chinese embassy.[20] Three months later, on April 20, 2026, HQ-RIO resubmitted the TDR to the Chinese embassy for submission to Hong Kong immigration officials.[21] Since that April 20, 2026 resubmission, there has been no communication from the Chinese embassy

---

12 *Id.* ¶ 20.
13 *Id.* ¶ 21.
14 *Id.* ¶ 22.
15 *Id.* ¶ 23.
16 Doc. 6-6 ¶ 4.
17 *Id.* ¶ 5.
18 *Id.* ¶ 6.
19 *Id.* ¶ 7.
20 *See* Doc. 1 ¶ 24; Doc. 6-6 ¶ 10 (noting that on April 20, 2026, HQ-RIO "resubmitted" the TDR to the Chinese embassy, implying that an initial TDR had already been submitted).
21 Doc. 6-6 ¶ 10.

regarding the status of Wu's TDR, nor is there any indication that ICE has followed up with the Chinese embassy.[22]

On March 16, 2026, Wu filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in this Court.[23] Following expedited briefing, the Court denied that petition without prejudice, finding that Wu's post-removal detention at that point was not unconstitutionally prolonged.[24]

Wu filed the instant Section 2241 petition on June 25, 2026.[25] He alleges that his removal to China is not reasonably foreseeable and thus his continued detention is unconstitutional. Respondent contends, on the contrary, that Wu's removal is reasonably foreseeable. On August 3, 2026, Wu filed a traverse, so his Section 2241 petition is ripe for disposition.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2241(c), a prisoner or detainee may receive habeas relief only if he "is in custody in violation of the Constitution or laws or treaties of the United States."[26] Because Wu filed the instant petition while he was detained within the jurisdiction of this court, is still currently detained by ICE, and asserts

---

22 Doc. 1 ¶¶ 27-28.

23 *See Wu v. Lyons*, No. 4:26-cv-00665, Doc. 1 (M.D. Pa. Mar. 16, 2026) (Brann, C.J.).

24 *See id.*, Docs. 9, 10 (M.D. Pa. Apr. 27, 2026). The Court also dismissed a portion of Wu's petition concerning conditions of confinement for lack of habeas jurisdiction. *See id.*, Doc. 9 at 7-9 (M.D. Pa. Apr. 27, 2026).

25 *See generally* Doc. 1.

26 *See* 28 U.S.C. § 2241(c)(3); *Maleng v. Cook*, 490 U.S. 488, 490 (1989).

that his continued detention violates due process, this court has jurisdiction over his Section 2241 petition.[27]

## III. Discussion

Wu brings an as-applied due process challenge to his continued detention under 8 U.S.C. § 1231. He argues that his removal to China is not reasonably foreseeable, so he should be released on supervision.[28] Respondent argues that Wu has not carried his burden to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future,[29] and alternatively claims that even if he could make such a showing, Respondent can rebut it.[30]

Section 1231(a) of Title 8 of the United States Code "governs the detention, release, and removal of individuals 'ordered removed.'"[31] Section 1231(a)(1)(A) provides that, following entry of a final order of removal, the United States generally must effectuate the noncitizen's removal during a 90-day "removal

---

27 *See Zadvydas v. Davis*, 533 U.S. 678, 699 (2001); *Spencer v. Kemna*, 523 U.S. 1, 7 (1998); *Khalil v. President, United States*, 164 F.4th 259, 277-79 (3d Cir. 2026) (holding that detention specific claims, like length and conditions of confinement, do not "arise from" removal proceedings and can be addressed by district courts).

28 *See* Doc. 1 at p. 13.

29 *See* Doc. 6 at 9-10.

30 *See id.* at 10-13. Respondent also raises a jurisdictional argument about revocation of supervised release and challenges to removal claims. *See id.* at 13-18. This appears to be a copy-and-paste error by the government, as Wu was never released on an order of supervision, nor does he challenge any substantive removal issue. Wu raises only one claim in the instant petition: an as-applied due process challenge to his continued post-removal detention.

31 *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022).

period."[32] That 90-day period generally begins to run, for noncitizens who are detained or confined for criminal offenses, on "the date the alien is released from [non-immigration] detention or confinement."[33] Detention is mandatory during this first 90 days.[34]

Following expiration of the 90-day removal period, certain noncitizens "may" be detained if they fall into one of four distinct categories: "(1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those [determined] 'to be a risk to the community'; and (4) those [determined] to be 'unlikely to comply with the order of removal.'"[35] How long a noncitizen may be detained pursuant to Section 1231(a)(6) following the 90-day removal period has been the subject of considerable litigation.

In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court held that Section 1231(a)(6) "does not permit indefinite detention," but rather "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States."[36] Of course, the phrase "a period reasonably necessary to bring about that alien's removal" provides no easily

---

32 8 U.S.C. § 1231(a)(1)(A).
33 *Id.* § 1231(a)(1)(B)(iii).
34 *Id.* § 1231(a)(2) ("During the removal period, the Attorney General *shall* detain the alien." (emphasis added)).
35 *Arteaga-Martinez*, 596 U.S. at 578-79 (quoting 8 U.S.C. § 1231(a)(6)).
36 *Zadvydas*, 533 U.S. at 689.

ascertainable guidelines.[37] According to *Zadvydas*, a period reasonably necessary to bring about a noncitizen's removal from the United States is presumptively six months.[38]

Thus, noncitizens detained under Section 1231(a)(6) past the six-month presumptively constitutional period may bring an as-applied Due Process Clause challenge to their continued detention should that detention become prolonged and potentially unlawful.[39] Specifically, if the noncitizen "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must either rebut that showing or release the [noncitizen]."[40] "And for detention to remain reasonable, as the period of prior

---

37 *See Arteaga-Martinez*, 596 U.S. at 586 (Thomas, J., concurring in part); *see also Guerrero-Sanchez v. Warden York Cnty. Prison*, 905 F.3d 208, 223-24 (3d Cir. 2018), *abrogated on other grounds by Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). In *Johnson v. Arteaga-Martinez*, the Supreme Court abrogated the Third Circuit's holding in *Guerrero Sanchez* that Section 1231(a)(6) presumptively "requires the Government to offer detained noncitizens bond hearings after six months of detention in which the Government bears the burden of proving by clear and convincing evidence that a noncitizen poses a flight risk or a danger to the community." *Arteaga-Martinez*, 596 U.S. at 576. The Court did not address the merits of the petitioner's individualized Due Process Clause challenge or hold that such a claim could not be pursued. *See id.* at 583-84. Moreover, the United States reassured the *Arteaga-Martinez* Court that "as-applied constitutional challenges" to prolonged detention under Section 1231(a)(6) "remain available." *Id.* at 583.

38 *See Zadvydas*, 533 U.S. at 701.

39 *See Zadvydas*, 533 U.S. at 699-701; *Guerrero-Sanchez*, 905 F.3d at 225; *see also Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (citing *Zadvydas*, 533 U.S. at 689, 701).

40 *Guzman Chavez*, 594 U.S. at 529 (internal quotation marks omitted) (citing *Zadvydas*, 533 U.S. at 701); *see also* 8 C.F.R. §§ 241.4, 241.13 (establishing agency procedures for determining whether noncitizens detained under 1231(a) past 90-day removal period should be released on supervision or remain in detention).

postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."[41]

As noted above, Wu's order of removal became administratively final on September 18, 2025, when the time to appeal expired. Wu, therefore, has been in post-removal detention under Section 1231(a)(6) for nearly eleven months, five months beyond the presumptively reasonable six-month period.

Wu has adduced evidence that (1) he completed *four* requests for travel documents in 2025; (2) ICE did not submit his TDR to the Chinese embassy until January 20, 2026, more than four months after his order of removal became final; (3) there is no indication that the Chinese embassy ever received or responded to that initial TDR, and thus on April 20, 2026, HQ-RIO resubmitted Wu's TDR to Chinese officials; (4) Wu is not an immigrant with an undocumented nationality—he previously possessed and used a Hong Kong Special Administrative Region passport in connection with his DACA application[42]; (5) according to ICE's own statistics, in 2024 there were 2,452 Chinese nationals in ICE detention and only 517 successful removals to China, with just 108 of those successful removals being detainees with criminal convictions or pending criminal charges[43]; and (6) there is

41 *Zadvydas*, 533 U.S. at 701.
42 Doc. 1 ¶ 46; Doc. 7 at 7.
43 Doc. 1 ¶ 47 (citing *Huang v. Albarran*, 818 F. Supp. 3d 1154, 1164 (E.D. Cal. 2026)).

no indication that China has reviewed or processed Wu's TDR, requested additional information, or received follow-up communication from ICE.

In view of this evidence and the length of delay in this case, the Court finds that Wu has carried his burden to show that there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Therefore, the burden shifts to Respondent to rebut Wu's showing and demonstrate why removal is reasonably foreseeable. Respondent has not carried her burden.

Respondent has not offered any individualized evidence showing why Wu's travel documents could be expected in the reasonably foreseeable future such that he should remain in detention. To the contrary, the affidavit relied on by Respondent reflects only speculative and generalized assertions. Deportation officer Alex Hans avers that, "[w]hile the process is long, ERO has been successful in obtaining TDs from [China] and effectuating removal orders."[44] No details are provided that could illuminate when a decision in Wu's case could be expected. Hans then concludes, "It is anticipated that petitioner's removal from the United States is imminent, therefore, there is a significant likelihood of removal in the reasonably foreseeable future."[45] The constitutional due process protections of the

---

44 Doc. 6-6 ¶ 12.

45 *Id.* ¶ 14.

Fifth Amendment, however, require more than such speculative, broad, and conclusory statements.[46]

Furthermore, Respondent has not even proffered generalized information regarding, for example, repatriation statistics for Chinese immigrants like Wu who arrived in the United States decades ago and have been convicted of a deportable offense.[47] Respondent, therefore, has not carried her burden to show that there is a significant likelihood of Wu's removal in the reasonably foreseeable future.

In view of the foregoing, the Court will grant Wu's Section 2241 petition and order that he be released from custody. His release "may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances,"[48] so the Court will order Respondent to release him from custody within 48 hours with appropriate conditions of supervised release as provided by 8 U.S.C. § 1231(a)(3) and attendant regulations.

---

[46] *See Phan v. Warden of Fed. Correctional Institution Lewisburg*, No. 3:26-cv-00770, 2026 WL 1080390, at *6 (M.D. Pa. Apr. 21, 2026) (Mehalchick, J.) (collecting cases); *Nguyen*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 ("The conclusory statements contained in Mr. Hans' declaration do not suffice to satisfy the Respondent's burden."); *Nguyen v. Sage*, No. 3:26-cv-1151, 2026 WL 1348513, at *7 (M.D. Pa. May 14, 2026) (Mariani, J.).

[47] *Cf. Nguyen v. Sage*, No. 3:26-cv-1661, 2026 WL 2087362, at *4 (M.D. Pa. July 20, 2026) (Mariani, J.) (finding that government failed to rebut petitioner's showing that his removal to Vietnam was significantly unlikely in the reasonably foreseeable future even when relying on general repatriation statistics).

[48] *Zadvydas*, 533 U.S. at 700.

## IV. CONCLUSION

For all the above reasons, the Court will grant Wu's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge